Wachtler, J.
The defendant was charged with two counts of murder, attempted robbery in the first degree and possession of a weapon, arising out of an attempted robbery of a liquor store. He moved to suppress certain statements made by him on the ground that they had been obtained in violation of his constitutional rights. Following a hearing, defendant’s motion was denied. Subsequently he pleaded guilty to manslaughter in the first degree (Penal Law, § 125.20), in satisfaction of all the counts of the indictment.
In essence, this case presents two issues: (1) whether the defendant’s right to counsel was abridged, thus rendering the defendant’s incriminating statement inadmissible; and (2) if, in fact, the trial court was in error in refusing to suppress this statement, whether the judgment of conviction, upon his plea of guilty, should nevertheless be allowed to stand.
On January 19, 1971, four men attempted to rob a liquor store in the Inwood section of Manhattan. During the course of the attempted robbery, John Killion, the proprietor of the store, was shot and killed. Four days later the police arrested two men, Gregoria Vasquez and Gammalier Valles, also known as Gammalier Baez, in connection with the incident, and, on February 19, 1971 a warrant for the arrest of the *612 defendant, Willie Ramos, was issued based on an information filed in the Criminal Court charging him with complicity in the homicide.
On August 10, 1971, approximately seven months after the shooting and six months after the issuance of the arrest warrant, the defendant, under the name of Adalberto Santiago, was arrested in Bronx County for possession of drugs. The following morning, while the defendant was awaiting arraignment on the drug charge in the detention pen below the courtroom, three police officers assigned to the Bronx Narcotics Division, acting on a tip received from a private citizen that morning, sought him out to question him in connection with the liquor store shooting. They located the defendant in the detention pen and asked him if his real name was Willie Ramos. After the defendant responded affirmatively, the officers moved him to a private room for further interrogation. When one of the officers asked: "Do you know anything about a homicide, a shooting uptown around 180th Street?”, the defendant replied: "Yes. It wasn’t me, it was Hector[1] that did it all.”
At this point the police officers advised the defendant of his constitutional rights and Ramos then proceeded to describe his presence in the liquor store and his involvement in the shooting.[2] No written record was made of the defendant’s statements. He was then returned to the detention pen to await arraignment on the drug charge.
On the arraignment for the drug charge Ramos was represented by a privately retained attorney. At the conclusion of the arraignment proceeding, he was paroled in the custody of a detective from the 34th Detective Squad, Manhattan, who was present in the courtroom with the outstanding arrest warrant relating to the liquor store incident. At this point, in the presence of the detective who was taking Ramos into custody, the attorney representing Ramos on the drug charge stated: "For the record, I have advised Mr. Santiago not to make any statements to these police officers who are taking him into custody.”
Ramos was taken to the 34th Precinct and later that day to *613 the offices of the District Attorney, where an Assistant District Attorney questioned him with respect to the shooting. Prior to this interrogation the Assistant District Attorney advised Ramos of his constitutional rights during the course of which the following colloquy took place:
"Q. You have the right to a lawyer at this time before any questions, do you understand that?
"A. Right.
"Q. If you do not have a lawyer at this time or you cannot afford a lawyer, a lawyer will be provided for you now before any questioning.
"A. What I can tell about this here I can tell you myself just like it happened. It can go against me, I would like a lawyer. I can tell you that myself, I hope it don’t go against me, I am trying to get out of this jam.
"Q. Well, that’s your decision to make, if you want a lawyer you can have one. What I am asking you are you willing to answer questions at this time without a lawyer?
"A. Well, can I ask you this? If I was to tell you it myself would that do any good, would a lawyer do any better?
"Q. I cannot tell, I can tell you what your rights are, do you understand?
"A. Yes. I have never been through this before, I don’t know how it works out. You got a lawyer, I don’t know what to do. I can explain it to you myself, in the liquor store, if it’s going to go against me that’s what I want.
"Q. That is your decision?
"A. If I get a lawyer I can set it in front of him?
"Q. You can speak with a lawyer.
"A. I already talked to detectives, if they got that record already it don’t make no difference.
"Q. Yes because they told about your rights too, is that right?
"A. Right. I told them just like it happened, it’s the same thing, their record is the same as yours.
"Q. I don’t know of any record at this point, it is up to you. If you want to answer questions without a lawyer I’d like to ask you some questions.
"A. Go ahead, ask me some questions.”
The Assistant District Attorney proceeded to inquire about the incident and Ramos repeated in greater detail the account *614 of the shooting which he had previously given to the police officers. A stenographer was present and a transcript was made of the entire question and answer session.
Subsequently, Ramos was charged in an indictment with two counts of murder, attempted robbery in the first degree, and possession of a weapon as a felony, all charges stemming from the January 19, 1971 shooting. Before trial Ramos moved to suppress the statements he had made to the three police officers and the statement made and transcribed before the Assistant District Attorney. After a hearing, defendant’s motions were denied and thereafter Ramos entered his plea of guilty of manslaughter in the first degree.
When Ramos appeared for sentencing he sought to withdraw his guilty plea, the application was denied and the defendant was sentenced to the maximum term of from 8 Vs to 25 years in prison.
On this appeal the defendant contends, inter alia, that his statements before the Assistant District Attorney should have been suppressed in that they were made during the course of an interrogation which occurred while the defendant was in custody and after an attorney had appeared in the proceedings on his behalf. Therefore, defendant argues, the prosecutor was prohibited from questioning the defendant in the absence of his attorney, and any purported waiver of defendant’s right to counsel, obtained in the absence of his lawyer, was ineffective. The prosecutor, on the other hand, contends that the defendant was not represented by counsel at the time of the interrogation in question; that the defendant was fully apprised of his constitutional rights; and that the defendant knowingly, willingly and voluntarily waived his right to counsel. We agree with the defendant.
The law in this State has long been settled that once a lawyer has entered a criminal proceeding representing a defendant in custody in connection with criminal charges under investigation, the prosecution cannot question the defendant in the absence of his attorney (People v Arthur, 22 NY2d 325; People v Gunner, 15 NY2d 226), nor can the defendant waive his right to counsel in the absence of his lawyer (People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325, supra). Thus the threshold question is whether, under these circumstances, an attorney had entered the proceedings representing the defendant. An examination of the cases provides us with guidance in the resolution of this issue.
*615 In People v Arthur (22 NY2d 325, supra), the defendant was arrested for throwing his two-year-old son off a bridge. The incident took place at approximately 5:30 p.m., and the defendant had been arrested shortly thereafter and taken to police headquarters for questioning. At approximately 6:00 p.m. an attorney who had known the defendant for a period of approximately two years and who had acted as his attorney in other matters, saw a news broadcast on television relating to the incident. On his own initiative, the attorney proceeded to police headquarters where he informed the officer who appeared to be in charge of the investigation that he was an attorney representing the defendant. The police officer went to check on the status of the interrogation. When he returned he informed the attorney that the police were finishing up their questioning and, if the attorney waited a few minutes, he could see the defendant. Sometime after the attorney arrived on the scene but prior to the time he was allowed to speak with the defendant, the defendant signed a written statement inculpating himself.
When the police completed their questioning, the attorney was allowed to speak with the defendant. After a short conference, the attorney returned home, but not before stating to the officer in charge that he thought the defendant was "’pretty sick and I think you should leave him alone. There is no sense in talking to him anymore’” (People v Arthur, 22 NY2d 325, 327, supra). The next morning the police again questioned the defendant, in the absence of his attorney, and he made incriminating statements.
This court held that both the written statement and the testimony of a police officer with respect to the incriminating statements made the morning following the incident, were inadmissible. In so holding, the court noted: "[0]nce the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant, the accused’s right to counsel attaches; and this right is not dependent upon the existence of a formal retainer. * * * Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel (People v. Vella, 21 N Y 2d 249). There is no requirement that the attorney or the defendant *616 request the police to respect this right of the defendant” (People v Arthur, 22 NY2d 325, 329, supra).
In the instant case, Ramos was represented by privately retained counsel at the arraignment on the drug charge, and the attorney proclaimed, in the presence of the police officer taking Ramos into custody in connection with this homicide, that "I have advised Mr. Santiago [Ramos] not to make any statements to these police officers who are taking him into custody.” Thus, the police were put on notice that the attorney had "communicated with the police for the purpose of representing the defendant,” and, therefore, it was improper for the prosecution to interrogate Ramos in the absence of his counsel.
The arguments proffered by the prosecution are without merit. They contend that the attorney involved represented Ramos only in connection with the unrelated drug charge and that, therefore, at the time of the interrogation there was no attorney representing the defendant in connection with the homicide case. While it is true that this court has held that the prosecution is entitled to question an accused in the absence of counsel even though counsel has been retained or assigned in a proceeding involving an unrelated crime (People v Taylor, 27 NY2d 327; People v Hetherington, 27 NY2d 242; People v Stanley, 15 NY2d 30, cert dsmd 382 US 802), those decisions cannot be read to allow the prosecution to ignore an affirmative act or statement on the part of an attorney, communicated in open court to the prosecution, indicating that the attorney has undertaken to represent the accused with respect to the second, unrelated crime.
In People v Taylor (27 NY2d 327, supra), relied upon by the lower court in its decision denying the defendant’s motion to suppress, the defendants had been assigned counsel in connection with a robbery case. Subsequently the police sought to question the defendants in connection with an unrelated assault and robbery case. The defendants were advised of their rights, including the right to counsel, and waived them. During the ensuing interrogation, the defendants made inculpatory statements. This court held that the defendant’s constitutional rights had not been violated and that the statements were admissible, quoting People v Hetherington, (27 NY2d 242, 245, supra): "Quite obviously, the fact thát the defendant may have been represented in the past by an attorney in some unrelated case is, for present purposes, beside the point. In *617 light of People v. Arthur (22 NY 2d 325, 329, supra)—and the other cases cited above—further questioning of an accused in the absence of counsel is proscribed only after the police learn that 'an attorney [has] enter[ed] the proceedings’ in connection with the charges under investigation. (See, also, People v. Delle Rose, 27 NY 2d 882, also decided today.) It follows, therefore, that, since the defendant did not have an attorney representing him in this case—or desire one—there was no violation of his right to counsel, and his statements were properly received in evidence” (People v Taylor, 27 NY2d 327, 331-332, supra).
Thus, in Taylor, we held that the prosecution is not prohibited from questioning a defendant in the absence of counsel where counsel had not entered the proceeding and where no request for counsel had been made, even though the same defendant might, by mere happenstance, be represented by counsel in a totally unrelated proceeding. In the instant case, consistent with Taylor, we do not hold that defendant’s right to counsel attaches by the mere fortuity that he was represented by counsel on an unrelated charge, but rather our ruling is based on the attorney’s affirmative and direct action relative to the interrogation which was about to be commenced in connection with the liquor store shooting.
The prosecution argues that the attorney’s statement that he had advised the defendant not to answer any questions did not necessarily indicate his representative role on behalf of the defendant in connection with the homicide proceedings. The People contend, in the first instance, that the attorney’s statement itself is ambiguous; i.e., that it could have related either to the drug charge or the homicide investigation. Secondly, the prosecution contends that the attorney’s conduct was inconsistent with that of an attorney representing a client charged with murder in that he (1) did not examine the arrest warrant; (2) did not attempt to determine the reason or the charges for which the defendant was being taken into custody; (3) did not attempt to ascertain where the defendant was being taken; and (4) never appeared at the defendant’s murder arraignment or any other proceeding in connection with the case. Lastly, the prosecution argues that the defendant himself never informed the police or the Assistant District Attorney that he was represented by counsel.
We are not persuaded by these arguments. If, in fact, the prosecution was in doubt as to whether an attorney had *618 entered the proceeding, the burden should rest squarely on it to insure that the defendant’s right to be represented by counsel be protected. The ambiguity of the lawyer’s statement or the manner in which the defendant’s attorney went about representing his client cannot be seized by the prosecution as a license to play fast and loose with this precious right. A defendant’s right to counsel cannot be made to depend on whether in the sole judgment of the prosecution there has been sufficient activity and conduct of a proper character so as to compel a conclusion that the lawyer has entered the proceedings. Nor can we agree with the prosecutor that the defendant has an affirmative burden to point out to the prosecution that an attorney has entered the proceedings on his behalf. To hold otherwise would violate our prior holdings and seriously undermine this constitutionally guaranteed right.
Since we find that the defendant was represented by counsel at the time of his interrogation, it follows that the prosecution’s interrogation of the defendant, absent his attorney, was impermissible. The statement taken by the Assistant District Attorney should, therefore, have been suppressed. Nor do we find tenable the suggestion that the quoted colloquy between the defendant and the Assistant District Attorney could have resulted in a waiver of the defendant’s right to counsel. The degree of the defendant’s literacy, the prosecutorial atmosphere in which this encounter took place, and the specific although perhaps confused request: "It can go against me, I would like a lawyer”, give testimony to his need and desire for legal advice from a lawyer representing his interests. Under circumstances such as these, the People cannot be said to have met the heavy burden they must bear in proving the waiver of counsel (Miranda v Arizona, 384 US 436, 475).
But in anticipation of our determination that the defendant’s statement should be suppressed, the People contend, nevertheless, that the guilty plea taken by the defendant should be allowed to stand. The prosecution argues that the statement would not be essential for a conviction and therefore the failure on the part of the trial court to suppress the statement did not provide the catalyst for the defendant’s plea of guilty. We cannot agree.
Although there may be cases in which the error of admitting excludable evidence may not require reversal, it cannot be gainsaid that a confession is a most serious matter in the *619 trial of a criminal case. It is enough in this case to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial.
Accordingly, although there is other evidence in support of the defendant’s guilt, the proper disposition would call for restoring the case to its prepleading status (People v Hobson, 39 NY2d 479; cf. CPL 470.55). The order of the Appellate Division should be reversed, the plea vacated, and the defendant’s statement before the Assistant District Attorney suppressed.

. Hector Rivera was the fourth person involved in the attempted robbery and homicide.

. We do not address the admissibility of either of these statements since that question was not raised on this appeal.