John Carro, J.
This is a Huntley hearing brought on by the defendant to suppress statements made to his parole officer at Rikers Island.
The defendant was arrested for robbery, was arraigned and had counsel assigned on May 12, 1976. He was indicted on May 17, 1976. On June 18, 1976, he was visited at the Rikers Island House of Detention for Men by his parole officer. He was questioned without benefit of the Miranda warnings and without the presence of counsel and made statements.
It is clear at this stage in the development of our law that a custodial interrogation of an indicted defendant by an agent of the State, without warnings as to that defendant’s Fifth Amendment right against self incrimination and Sixth Amendment right to counsel, and absent his previously assigned counsel, is not to be permitted, and that the fruits of such interrogation must be suppressed.
Indeed, we have gone far beyond this statement as regards a defendant’s right to counsel in self incrimination situations. Our State preceeded and surpassed the Supreme Court of the United States in its protection of the right to counsel, not only in reliance upon the Fifth and Sixth Amendments, through the Fourteenth, but also on State constitutional grounds. (See People v Di Biasi, 7 NY2d 544; People v Waterman, 9 NY2d 561; People v Meyer, 11 NY2d 162; People v Donovan, 13 NY2d 148; People v Gunner, 15 NY2d 226.)
In People v Authur (22 NY2d 325, 329) the court held, "Once an attorney enters the proceeding, the police may not *468 question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel.”
This doctrine was strongly reaffirmed in People v Hobson (39 NY2d 479, 481), "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer * * * Any statements elicited by an agent of\ the State, however subtly, after a purported 'waiver’ obtained without the presence or assistance of counsel, are inadmissible.” (Italics supplied; see, also, People v Ramos, 40 NY2d 610; People v Townes, 41 NY2d 97; People v Roberson, 41 NY2d 106.)
This case is well within the ambit of the above authorities, with the exception of the relationship of the parties. The question here is, under these facts, does the status of the defendant as a parolee and of his interrogator as his parole officer diminish his constitutional rights in a new prosecution, so as to permit the admission into evidence of a statement taken in the absence of counsel and without the Miranda warnings?
People v Ronald W. (24 NY2d 732, 735) held that a probation officer "is not a Taw enforcement’ officer wdthin the spirit or meaning of Miranda v. Arizona” and that the probation officers were not required to give the defendant the Miranda warnings.
However, Ronald W. dealt with a voluntary, noncustodial statement, and, most importantly for our purposes, with a probation revocation proceeding.
That case therefore is easily distinguishable from the one at bar, requiring this court to consider anew the question of the parolee’s interrogation by his parole officer in a fresh prosecution. For this purpose, any distinctions between the parole and the probation status may be overlooked.
Unfortunately, this court has found no authority in this jurisdiction dealing with the precise question to be considered here. Indeed, authority is sparse throughout the country.
Almost every case on all fours with our fact pattern held that the parole status did not diminish the defendant’s right to receive the constitutional warnings. Most did not discuss the right to have counsel present as in People v Arthur (22 NY2d 325, supra) and People v Hobson (39 NY2d 479, supra). *469 This right, in the opinion of this court, once it attaches, is even superior to the right to the constitutional warnings.
These decisions distinguish between a probation or parole revocation proceeding and a new prosecution. In United States v Deaton (468 F2d 541, 544, cert den 410 US 934) the court stated: "Deaton’s parole officer testified, over objection, to statements made to him by Deaton, tending to incriminate Deaton on the harboring and concealing charge, uttered in response to direct interrogation by the parole officer when Deaton was in custody, and without the officer having given Deaton the warnings required by Miranda. We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose. But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior Miranda warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater' than when the interrogation is by an enforcement officer. The use of admissions extracted in this manner from the parolee, in his trial on charges based on the criminal conduct inquired about, raises an issue significantly different from that in United States v. Johnson, 455 F.2d 932 (5th Cir. 1973). There we held that because a parole revocation hearing was not an adversary or a criminal proceeding but rather was an administrative hearing wherein the exclusionary rule has no application, prior Miranda warnings are not required as a condition to the admission in evidence at the revocation hearing of statements made by the parolee to the parole officer.” (See, also State v Gallagher, 38 Ohio St 2d 291, cert den 425 US 257, which relies heavily on Deaton, supra, and reached the same result.)
The court in State v Lekas (201 Kan 579, 582, 584) was greatly concerned with the distinction between parole revocation and new prosecution, "It should be emphasized the issue here presented is not whether the appellant’s parole can be revoked after the appellant confesses to the parole officer concerning a new crime, without first having been informed of his constitutional rights * * * Here the incriminating statements admitted in evidence were used to convict the appellant for a new offense. This is the issue confronting the court.
"We hold the Miranda decision places a duty upon the officers of the Kansas State Board of Probation and Parole, when they are investigating the commission of a fresh or new felony by a parolee, to comply with the mandate in Miranda, *470 if the incriminating statements they elicit from a parolee are to be admissible as evidence in the prosecution of the new offense.”
In a 1971 Florida case, Nettles v State (248 So 2d 259 [Fla] the court, relying primarily on People v Ronald W. (supra) held that the defendant waived his right to his constitutional Miranda warnings by his probation officer, when he accepted probation.
This court agrees with the dissent, "The majority have overlooked the fact that not one of the cited cases supports the opinion. People v. Ronald W. * * * are cases in which the question was whether an admisison to a probation supervisor might be introduced in a proceeding for revocation of probation without proof of compliance with Miranda. I agree that it can be. * * * But whether that* same admission can be admitted at the defendant’s trial for the subsequent offense — the question now before us — is a different matter. * * * I think that the proper rule is that in a proceeding for revocation of probation or parole it need not be shown that Miranda was followed, but that in a prosecution for a separate offense it must be shown either that the interrogation was not in a custodial setting or that the accused knew the rights he was waiving.” (Nettles v State, supra, pp 260-261.) (Or, of course, that the defendant was not represented by counsel [People v Hobson, supra; People v Arthur, supra.])
The Courts of New Jersey were faced with this same problem in a 1975 case. (State v Davis, 67 NJ 222, 226-227, cert den 425 US 943.) Here again the court held in accordance with the same principles:
"It is clear that the Miranda rule is not applicable to the routine parole interview between a parole officer and a parolee. * * *
"However, this is not the situation presented in this case. Pace was in jail charged with having committed an armed robbery when he was questioned by his parole officer. * * *
"Admittedly, the questioning was pertinent as to whether or not Pace was adhering to the conditions of his parole so that the statement Pace gave at that time would be a part of his parole record and available in any future parole proceedings.
"However, to attempt to use that in-custody statement outside the framework of the parole system and at Pace’s subsequent criminal trial on the charge of armed robbery, *471 implicated defendant’s constitutional rights and would require a showing that Pace had first been advised of such rights under Miranda and had knowingly and voluntarily waived them.”
There are cases in many jurisdictions, including our own, which differ in one or more respects from the matter before us, so that they are not strictly "in point” or "on all fours”. Many of these discuss issues, which while germane, are not controlling here. For example:
(a) Parole as an act of grace coupled with restrictions, and its acceptance as a waiver of rights. (See People v Randazzo, 15 NY2d 526 [see dissent]; People v Way, 65 Misc 2d 865; People v Langella, 41 Misc 2d 65; People v Chinnici, 51 Misc 2d 570; Nettles v State, 248 So 2d 259, supra [Fla] [see dissent]; State v Johnson, 202 NW2d 132 [SD]; State v Williams, 486 SW2d 468 n [Mo]; People v Gastelum, 237 Cal App 2d 205; People v Hernandez, 229 Cal App 2d 143.)
Hernandez states (supra, at p 148) "At this point we confront authorities theorizing that parole is an act of grace, acceptance of which entails the voluntary surrender or curtailment of constitutional rights * * * The rationale is not particularly appealing. It makes constitutional rights dependent upon a kind of 'contract’ in which one side has all the bargaining power. A better doctrine is that the state may not attach unconstitutional conditions to the grant of state privileges.”
(b) Parole as an extention of the prison cell. (See People v Randazzo, supra, [dissent]; People v Way, supra; People v Langella, supra; People v Santos, 25 NY2d 976; State v Lekas 201 Kan 579, supra; People v Quilon, 245 Cal App 624.) Also, see, People v Hernandez (229 Cal App 2d 143, 150, supra), "If this constitutional fact [diminishment of the Fourth Amendment rights] strips him of constitutional protection against invasions of privacy by his parole officer, the answer is that he has at least as much protection as he had within the prison walls. He did not possess this guaranty in prison and it was not restored to him when the gates of parole opened.”
(c) Analogy between diminution of Fourth Amendment rights and Fifth and Sixth Amendment rights. (See People v Way, supra; People v Langella, supra; State v Williams, 486 SW2d 468, supra [Mo].) People v Gastelum (237 Cal App 2d 205, 209, supra) states, "The only novel question is whether, by analogy to the rule on search and seizure, defendant’s *472 status as a parolee negatived his constitutional rights to be advised of his right to counsel or to remain silent. The Supreme Court in People v. Dorado supra, upheld the right of a felon incarcerated in the state prison to be 'effectively informed’ of his right to counsel and of his 'absolute right to remain silent’ under the Fifth Amendment. Certainly a parolee in constructive custody is no less entitled to these constitutional rights than is a felon in actual custody.”
This court’s decision, however, rests on those opinions strictly in point with our own fact pattern. The admissions made to the parole officer at Rikers Island are suppressed.