OPINION OF THE COURT
Geraldine T. Eiber, J.
Indictment No. 4067 charges the defendant Eric D. Parker with criminal possession of a weapon in the third degree.
The defendant moves to suppress statements made to his parole officer while he was on parole, claiming his constitutional rights were abridged.
A Huntley (People v Huntley, 15 NY2d 72) hearing was held before me on October 26, 1979. The People, in order to sustain their burden of going forward, called Jeffrey Gleason, a former United States probation and parole office. The testimony, uncontradicted, had the force and flavor of credibility.
FINDINGS OF FACT
On April 24, 1978 the defendant Eric Parker contacted his parole officer, Jeffrey Gleason, and advised him that he had been arrested on April 20, 1978 and that his next court appearance was on the 26th of April. It was agreed at that time that the defendant would present himself, after his court appearance on April 26, at Mr. Gleason’s office.
On April 26 the defendant was advised by his parole officer "that any discussion he had with me at that time could result in a possible parole revocation based on any statement he might want to make.” The defendant was not given Miranda warnings. In substance, the defendant related his involvement in the crimes charged — facts which were inculpatory.
The defendant left Mr. Gleason’s office and thereafter continued to report regularly through November, 1978.
Some time between the months of April and June, 1978 the parole officer visited Brooklyn Supreme Court and examined the complaint filed against defendant to determine what were the actual charges for inclusion in his report to the parole commission. No other contact was made with law enforcement officials at this time.
On November 15, 1978 the defendant telephoned Mr. Gleason and informed him that all charges against him had been dismissed. Since November 15 was a regular reporting day, *802 the parole officer asked the defendant to come to his office later that same day. The parole officer again cautioned the defendant that anything he said could be used by the parole commission to revoke his parole, and again the defendant made a statement which was highly incriminating. Miranda warnings were not given. On that date the parole officer gave the defendant a standard form for him to commit to writing his involvement concerning the arrest. The defendant complied and returned the form to Mr. Gleason on November 20, 1978. A copy of said signed statement has been introduced into evidence.
The parole officer indicated that at some time subsequent to the granting of parole, each parolee is required to sign an agreement, "it’s sort of a contract which he signs before he is released.” Parole rules include: "notify any change in residence; report on a regular basis; notify of employment; worked regularly; notify if you are arrested or questioned by a law enforcement officer; maintain good hours and so forth.”
Pursuant to instructions from his supervisor, Mr. Gleason contacted the Brooklyn District Attorney’s office on December 4, 1978. Mr. Gleason testified before the Grand Jury, and the defendant was reindicted on the present charge in light of this new evidence.
CONCLUSIONS OF LAW
The issue confronting the court is whether admissions of criminal conduct made to a parole officer can be introduced into evidence in a prosecution where no Miranda warnings were given prior to making of the statement.
There is a paucity of case law addressing this issue, but close examination of existing authority establishes, in this jurisdiction, that a probation officer "is not a 'law enforcement’ officer within the spirit or meaning of Miranda v. Arizona”; that probation officers are not required to give the defendant Miranda warnings in a noncustodial situation (People v Ronald W., 24 NY2d 732, 735) and that "For this purpose, any distinctions between the parole and the probation status may be overlooked” (People v Ferguson, 90 Misc 2d 467, 468).
Defense relies heavily upon People v Ferguson (supra), where the court suppressed statements made by defendant to his parole officer who visited him at a house of detention *803 following his indictment on a charge of robbery, and questioned him without benefit of the Miranda warnings. The facts of this case clearly distinguish it from Ferguson in that here the defendant was not in a custodial setting. Miranda established the classic definition of custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” (Miranda v Arizona, 384 US 436, 444.)
The defense has argued that this visit to the parole officer was in fact a custodial setting in that the defendant was under heavy "psychological” pressure to respond to questions put to him by his parole officer as that officer has the power to detain and arrest a parolee.
This court cannot agree with defendant’s contention; the test laid down in People v Yukl (25 NY2d 585, 589) for determining whether a defendant is in custody "is not what the defendant thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position.”
In this particular case we have a fact pattern whereby a parolee initiated routine contact with a parole officer following an arrest and prior to a subsequent court appearance, and this parolee was advised at that time "to come in and see” his parole officer following the next court appearance. This does not convey the element of the "incommunicado, police-dominated atmosphere of custodial interrogation and overbearing of the subject’s will” necessary for determining custodial interrogation established by People v Ronald W. (supra, p 734); but rather the freedom to come and go after each visit to the parole officer would characterize the questioning as routine and an integral part of the parole process. These monthly visits took place from April, 1978 until at least November, 1978, and after each visit the defendant was free to leave.
This court would reason that parole is now accepted as a form of case work. "Its principal function is to help the offender bridge the gap between the relatively abnormal environment of the penal or correctional institution and the social environment to which he is to be returned so that he may gradually exercise his rights and assume his duties and responsibilities as any other well-adjusted citizen” (Encyclopedia of Criminology, Philosophical Library, 1949).
The parole officer must be free to develop a meaningful *804 relationship with a parolee so that he can focus his influence upon the parolee in order to bring about optimum results in rehabilitation. To hold that the probationer is entitled to the aid of counsel every time he is to be interviewed or questioned by his supervising officer would materially hamper if not destroy the entire purpose of parole status (People v Ronald W., supra).
Additional characterization as to what is or is not a custodial setting relevant to these facts can be found in Oregon v Mathiason (429 US 492), where the court held that a defendant was not in custody, within the Miranda context, even where he was questioned by a police officer at a police precinct where he was free to depart.
The defense also raises the issue that once law enforcement officers have been put on notice that an attorney has entered into a criminal case, the defendant may not waive his right to counsel except in the presence of counsel (People v Hobson, 39 NY2d 479).
Assuming, arguendo, that a parole officer was a law enforcement officer required to proffer warnings where judicial proceedings had been initiated, the issue in this case is moot. The signed statement made by defendant and forwarded to the parole commission, which subsequently triggered the supervisor’s order to the parole officer to make contact with the District Attorney’s office, was made after all criminal proceedings had been terminated. Without judicial proceedings pending, no right to counsel inures in a noncustodial setting (People v McKie, 25 NY2d 19).
Examination of law set down in a sister jurisdiction, Nettles v State (248 So 2d 259, 261 [Fla]), the language of the dissent which declares that "the proper rule is that in a proceeding for revocation of probation or parole it need not be shown that Miranda was followed, but that in a prosecution for a separate offense it must be shown either that the interrogation was not in a custodial setting or that the accused knew the rights he was waiving”, is in accord with this court’s thinking.
Custody not having been established, the motion to suppress statements is denied.