[725 NYS2d 480]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEOFILO NOEL COTTON, Appellant.

Fourth Department, March 21, 2001

APPEARANCES OF COUNSEL

*Lawrence Louis Kasperek,* Rochester, for appellant.

*Howard R. Relin, District Attorney* of Monroe County, Rochester (*Stephen K. Lindley* of counsel), for respondent.

## OPINION OF THE COURT

LAWTON, J.

On this appeal, we must determine whether the statement made by defendant to police was obtained in violation of his right to counsel under NY Constitution, article I, § 6, and thus whether County Court erred in denying his suppression motion. For the reasons set forth herein, we conclude that defendant's motion should have been granted.

On September 24, 1992, defendant was arrested on a felony complaint for the crime of murder. At defendant's arraignment the following day, defendant's retained counsel appeared on defendant's behalf. The People thereafter presented the case to the Grand Jury, which dismissed the charges. On September 16, 1994, nearly two years later, the police again arrested defendant on the same murder charges and interrogated him in the absence of counsel, during which interrogation defendant made an incriminating statement.

At the *Huntley* hearing on defendant's pretrial motion to suppress the statement, the arresting officer testified that he had been involved in defendant's 1992 arrest and knew that defendant previously had been arraigned on the same murder charges. Defendant's attorney testified that, following the Grand Jury's dismissal of the charges against defendant with leave to re-present, the prosecutor informed him that the People planned to re-present the charges to another Grand Jury. The court denied defendant's suppression motion, concluding that the attorney-client relationship between defendant and his attorney terminated when the Grand Jury dismissed the murder charges against defendant in 1992. The court found that there was no proof of an ongoing investigation and, in addition, found that defendant had been represented by a different attorney on an intervening criminal charge. After trial, the jury returned a verdict finding defendant guilty of murder in the second degree (Penal Law § 125.25 [2]).

The issue before us is whether the attorney who represented defendant could unilaterally deprive defendant of his right to counsel by communicating to an Assistant District Attorney that he could no longer represent defendant because of a

conflict arising from his subsequent representation of a person who implicated defendant in the murder. To state the issue is to resolve it. The People do not contest that defendant actually retained counsel in the matter at issue. Rather, they contend that defendant was no longer represented at the time he made the subsequent incriminating statement. Neither the fact pattern present here nor the law supports that contention.

In *People v West* (81 NY2d 370, 373), the Court of Appeals emphasized the fundamental importance of the right to counsel:

> "The State right to counsel is a ' "cherished principle", rooted in this State's prerevolutionary constitutional law and developed "independent of its Federal counterpart." ' (*People v Harris*, 77 NY2d 434, 439 [quoting *People v Settles*, 46 NY2d 154, 160-161].) 'The "highest degree of [judicial] vigilance" is required to "safeguard" it.' (*People v Harris*, 77 NY2d, at 439 [quoting *People v Cunningham*, 49 NY2d 203, 207].)"

The Court in *West* specified two instances in which the right to counsel attaches indelibly:

> "*First*, the right attaches indelibly upon the commencement of formal proceedings, whether or not the defendant has actually retained or requested a lawyer (*see, e.g., People v Samuels*, 49 NY2d 218; *People v Settles*, 46 NY2d 154, *supra; People v Di Biasi*, 7 NY2d 544; *see also, Kirby v Illinois*, 406 US 682 [parallel Federal right]). * * *

> "*Second*, the right to counsel attaches indelibly where an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter (*People v Skinner*, 52 NY2d 24, 26; *People v Cunningham*, 49 NY2d 203, 209; *People v Hobson*, 39 NY2d 479, 481; *People v Arthur*, 22 NY2d 325, 329)" (*People v West, supra*, at 373-374).

We conclude that both instances apply in this case. Because defendant limits his argument to the second instance, however, we will similarly limit our analysis.

Concomitant with the right to counsel is the requirement that any subsequent waiver of that right must be voluntary and intelligent (*see, People v Skinner*, 52 NY2d 24, 29, *supra*). The Court of Appeals has determined that, once the right to

representation indelibly attaches, any waiver of that right may be made only in the presence of counsel (*see, People v Settles, supra*, at 165-166; *People v Ramos*, 40 NY2d 610, 614; *People v Hobson, supra*, at 484).

Here, the People had the burden of proving that defendant and the interrogating officer knew that defendant was no longer represented at the time defendant's statement was made and that defendant, in the presence of counsel, voluntarily and intelligently waived further representation. To hold otherwise would be to substitute the term "transitory" for the term "indelible." There is no proof in this case that, before making the incriminating statement, defendant knew that his previously retained counsel had withdrawn his representation. To the contrary, the People stipulated that defendant did not know that fact. Further, there is no evidence that the interrogating officer knew of the alleged withdrawal. In any event, the interrogating officer did not rely upon the alleged withdrawal, but rather stated that he believed that the representation terminated when the original charges were dismissed.

The facts of this case are similar to those in *People v Miller* (54 NY2d 616). In *Miller*, the defendant obtained representation to oppose two applications to compel him to appear in a lineup relating to a rape charge. The court denied the applications. A year later, the police questioned the defendant on the same rape charge in the absence of the defendant's attorney, and the defendant gave an incriminating statement. In determining that the defendant's statement must be suppressed, the Court noted that both the District Attorney's office and the police were aware of the representation at "judicial proceedings directly related" to the rape charge, and the Court wrote, "Counsel having once entered the proceedings in connection with the charge under investigation, defendant could not waive his right to counsel in the absence of the attorney" (*People v Miller, supra*, at 618).

Similarly, in this case the People and the police knew that defendant had retained an attorney to represent him on the murder charges. Before defendant's second arrest, the prosecutor gave notice to defendant's attorney that the People were representing the charges to the Grand Jury. Although one of the arresting officers testified that he could not recall whether defendant had counsel, we conclude that he should have known through his continued investigation that defendant was represented. As the Court of Appeals wrote in *People v Marrero* (51 NY2d 56, 59):

"Once an attorney has appeared on the defendant's behalf we have refused to allow the police to rely on arguable ambiguities in the attorney-client relationship in order to justify police questioning of the defendant without the attorney being present (see, e.g., *People v Ramos, [supra]*). We have indicated that if the police are uncertain as to the scope of the attorney's representation, the defendant should not be questioned (*People v Coleman*, 42 NY2d 500, 507). * * *

"The important factor * * * [is] the police awareness of an attorney's appearance on the defendant's behalf, rather than the precise terms of the retainer or appointment."

In any event, any doubt the police may have had concerning defendant's right to representation must be resolved in defendant's favor (*see, People v Marrero, supra*, at 58-59; *People v Ramos, supra*, at 617-618; *People v Barley*, 124 AD2d 1021, 1022-1023).

Likewise, the fact that, before the interrogation, defendant's attorney communicated to the Assistant District Attorney that he could no longer represent defendant because of a conflict is of no moment. The People stipulated that defendant's attorney communicated the existence of the potential conflict to defendant after the interrogation. Until defendant's attorney discussed the conflict with defendant, and together they determined that it was in defendant's best interest for defendant to obtain other counsel, he continued as defendant's attorney on the murder charges. A conflict does not automatically terminate an attorney-client relationship (*see, People v Gomberg*, 38 NY2d 307, 313-314). The Code of Professional Responsibility provides that, "[e]ven when withdrawal is justifiable, a lawyer should protect the welfare of the client by giving due notice of the withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm" (Code of Professional Responsibility EC 2-32). Defendant's attorney did not communicate the conflict to defendant, let alone give defendant notice of his withdrawal, until after the interrogation, nor did he inform defendant that the police were targeting him on the past murder charges.

Even assuming, arguendo, that the Assistant District Attorney was entitled to rely on the statement of defendant's at-

torney, we conclude that there is no evidence that the police were aware of the conversation between defendant's attorney and the Assistant District Attorney. Rather, the officer testified that he believed that this was a "new matter" because the original charges were dismissed and this was a new arrest. In any event, the police did not rely upon the disclaimer of representation of defendant's attorney.

Moreover, the prosecutor is not an innocent bystander. He and defendant's attorney agreed that the new client of defendant's attorney could testify, thus enabling the prosecutor to obtain an order to re-present the charges against defendant to a new Grand Jury. No doubt the witness received a favorable *quid pro quo* for that evidence. Such trampling of a defendant's right to counsel should not be permitted and, if permitted, could be employed by law enforcement officials to avoid the constitutional strictures designed to protect the right of representation (*see, People v Robles*, 72 NY2d 689, 699; *People v Osgood*, 52 NY2d 37, 45, n 2). Consequently, defendant's motion to suppress should have been granted.

Accordingly, we conclude that the judgment should be reversed, defendant's motion granted, the statement suppressed and a new trial granted on count two of the indictment.

WISNER, J. (concurring in result only). We concur in the result only. County Court's finding that defendant's attorney communicated to the District Attorney's office prior to the re-presentment that, because of a conflict of interest, he "did not represent" defendant is not supported by the record. The record establishes that, in fact, defendant's attorney informed the prosecutor that he "could no longer" represent defendant because of the conflict and that "other arrangements would have to be made to obtain separate counsel or different counsel for Mr. Cotton." Had defendant's attorney unequivocally informed the prosecutor that he no longer represented defendant, we would affirm. In that event, unlike in *People v West* (81 NY2d 370), the police working in close cooperation with the prosecutor would have had reason to believe that representation had ceased before they questioned defendant. The statement by defendant's attorney that he "could no longer" represent defendant was equivocal at best and did not serve to terminate the attorney-client relationship (*see*, Code of Professional Responsibility DR 2-110 [a] [2] [22 NYCRR 1200.15 (a) (2)]), and defendant established that the attorney-client relationship continued at the time of interrogation.

PIGOTT, JR., P. J., and PINE, J., concur with LAWTON, J.;

WISNER and SCUDDER, JJ., concur in the result only in a separate opinion by WISNER, J.

Judgment reversed, on the law, motion granted, statement suppressed and new trial granted on count two of the indictment.