THE PEOPLE OF THE STATE OF NEW YORK ex rel. GARY KING by STEVE SANDLER, Appellant, v NEW YORK STATE BOARD OF PAROLE et al., Respondents.

First Department, January 9, 1979

## APPEARANCES OF COUNSEL

*Steve Sandler* of counsel *(William E. Hellerstein* and *Donald H. Zuckerman,* attorneys), for appellant.

*Stephen Marcus* of counsel *(Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for respondents.

## OPINION OF THE COURT

LANE, J.

The facts in this case are undisputed. Gary King was released on parole on November 5, 1976 after having been previously sentenced to two concurrent terms of one-year-to-life imprisonment for criminal sale of a controlled substance in the third degree, a class A-III felony.

On October 10, 1977, King was arrested for possession of

heroin. Defendant was indicted for this crime; however, a motion to suppress the illegally seized narcotics was granted on January 26, 1978, and the indictment resulting from the arrest on October 10, 1977 was ultimately dismissed on February 23, 1978. A further result of the October 10, 1977 arrest was the issuance of a parole violation warrant against King on November 10, 1977. King met with his parole officer and admitted to the possession of heroin for which he was arrested on October 10, 1977. A final parole revocation hearing was held on February 22, 1978, at which time King's parole was revoked and parole release consideration was denied for a period of one year. At the parole revocation hearing which was held, notes of the parole officer relating to King's admissions and a laboratory report regarding the alleged heroin which was seized, though requested, were not produced.

King petitioned for a writ of habeas corpus, which was sustained to the extent of vacating the finding of the Board of Parole and directing that a new hearing be held, at which time the items sought to be discovered should be produced. We would affirm.

■ The major question with which we are faced is whether King's admission to his parole officer should be excluded. The rationale for exclusion is that the admission of parole violation to the parole officer stemmed from an illegal search and seizure occurring on October 10, 1977. Were we to agree with this rationale, we could nevertheless find that the admission to the parole officer should not be excluded from consideration because of the doctrine of attenuation; that is, since the evidence adduced by the parole officer was gained by means sufficiently distinguishable from the initial illegality, it was purged of the primary taint and therefore admissible against the parolee *(Brown v Illinois,* 422 US 590). The exclusion of the "fruit of the poisonous tree," as it has been applied to criminal prosecutions, is based upon an intent to deter unconstitutional and improper police conduct *(Elkins v United States,* 364 US 206, 217; *Terry v Ohio,* 392 US 1, 29).

The case at bar is not one where an illegal arrest was deliberately made with the knowledge that King was on parole and, with the consideration that if an indictment would not survive, at the very least parole revocation would ensue. We can see, therefore, no deterrent effect in applying this exclusionary rule to a parole revocation hearing. In the case at bar, the parole officer was mandated to inquire indepen-

dently whether a parole violation occurred (former Correction Law, §§ 210, 215, 216, now Executive Law, § 259-a, subd 5). His independent inquiry, mandated by statute, resulted in the admission by King and should be susceptible of consideration at a revocation hearing (cf. *People v Huntley,* 43 NY2d 175).

██ ██ Since we view the parole officer's inquiry as a proper execution of his duties, we hold that King's statements to him would be admissible at the revocation hearing. We note at this juncture that a parole revocation hearing is not a stage of a criminal prosecution *(Gagnon v Scarpelli,* 411 US 778, 782), and the standards applied to the former do not carry over to the latter *(Morrissey v Brewer,* 408 US 471, 480). Accepting the rationale of deterrence of future illegal police activities as a basis for exclusion of evidence improperly seized, we nonetheless find no basis for applying the rule to parole revocation hearings where the parole officer's inquiries were relevant. The revocation process involves a deprivation of a conditional liberty and, as such, the procedural protections afforded must be flexible in consonance with the demands of the particular situation *(Morrissey v Brewer, supra,* p 481; see, generally, Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure, Ann. 77 ALR3d 636).*

██ The exclusionary rule was never intended to proscribe the use of illegally seized evidence in all proceedings or against all persons (see, e.g., *United States v Calandra,* 414 US 338, where exclusionary rule was not extended to Grand Jury inquiries), and we would therefore not apply it to the usual parole revocation proceedings, either, absent a showing of unreasonableness within the conditional rights of a paroleee (cf. *People v Huntley,* 43 NY2d 175, *supra).* To extend the rule here would be to damage the parole process to a degree far outweighing the tangential deterrent effects on improper police activity *(United States ex rel. Sperling v Fitzpatrick,* 426 F2d 1161; *Matter of Martinez,* 1 Cal 3d 641, cert den 400 US 851).

██ Lastly, we would note that though the exclusionary rule has been applied to administrative hearings *(Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647), it should not be applied to a parole revocation hearing where the evidence

---

* Principles applicable to probation revocation should apply equally to parole revocation *(Gagnon v Scarpelli,* 411 US 778, 782).

sought to be suppressed "was not seized by the agents of, or for the purposes of, the agency conducting the administrative proceeding" *(People v McGrath,* 46 NY2d 12, 31-32).

Accordingly, the judgment of the Supreme Court, Bronx County (CIOFFI, J.), entered July 31, 1978, which sustained the writ of habeas corpus to the extent of vacating the finding of the Parole Board and directing that a new hearing be held, should be affirmed, without costs.

MURPHY, P. J. (dissenting). Petitioner was released on parole on November 5, 1976. He had previously been sentenced to two concurrent terms of one-year-to-life upon his two-count conviction of criminal sale of a controlled substance in the third degree. On October 10, 1977, the petitioner was arrested for criminal possession of a controlled substance in the second degree. At the petitioner's request, an arresting officer and his mother notified his parole officer of this arrest. The parole officer visited the petitioner at Riker's Island on October 14, 1977. During the interview, the petitioner admitted that he possessed the narcotics at the time of his arrest. The parole officer never read the petitioner his *Miranda* warnings nor did he notify the petitioner's attorney that the interview was to take place.

On January 26, 1978, petitioner's motion to suppress the narcotics was granted because the arrest and the search were found to be unlawful. The criminal charges were eventually dismissed on February 23, 1978. However, at a final parole revocation hearing held on February 22, 1978, the parole officer testified that the petitioner had admitted that he possessed the narcotics at the time of his arrest. Parole was revoked on that date for petitioner's failure to lead a law-abiding life and for his possession of heroin.

In this habeas corpus proceeding, the court at Criminal Term stated that the petitioner's admission to his parole officer would have been suppressed as a "fruit of a poisonous tree" had there not been sufficient attenuation. Likewise, the court found that there were no violations of the Fifth and Sixth Amendments. Nonetheless, a new final parole revocation hearing was ordered for the respondent's failure to make available a laboratory report and the parole officer's notes.

The Court of Appeals has already found that the exclusionary rule of *Mapp v Ohio* (367 US 643) applied to administrative as well as criminal proceedings. *(Matter of Finn's Liq.*

*Shop v State Liq. Auth.,* 24 NY2d 647.) In particular, the court stated *(supra,* pp 662-663): "In sum, in each of these three cases, the evidence relied upon to support the Authority's determination was found to have been obtained in violation of the petitioner's Fourth Amendment rights. The logic of the *Mapp* rule, which requires the exclusion of such evidence in order to deter State officials from engaging in unlawful searches and seizures, applies equally whether the evidence is sought to be used in a criminal trial or on an administrative hearing. There can be no justification for any State agency, charged with enforcement of the law, to rely, in fulfilling its function, upon the unlawful and unconstitutional acts of its agents."

It should be stressed that the Court of Appeals in *Finn* applied the exclusionary rule to all administrative hearings. (See, e.g., *Matter of Gaglia v Starr,* 59 AD2d 839; *Matter of McPherson v New York City Housing Auth.,* 47 AD2d 828.) The Court of Appeals did not exclude the final parole revocation hearing, which is in the nature of an administrative proceeding *(People ex rel. Maggio v Casscles,* 28 NY2d 415), from its broad ruling in the *Finn* case. Therefore, a more narrow question is presented as to whether petitioner's admission should have been received as evidence in the hearing under the doctrine of "attenuation". Under that doctrine, evidence will be admitted if it has been gained by means sufficiently distinguishable to be purged of the primary taint. *(Wong Sun v United States,* 371 US 471, 488.) In *Brown v Illinois* (422 US 590, 603, 604), the United States Supreme Court stated that no single fact is dispositive of whether or not an attenuation has been effected. To assist in such a determination, the Supreme Court mentioned the following factors for consideration: (1) the administration of *Miranda* warnings; (2) the temporal proximity of the unlawful arrest and the confession or admission; (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct. These and related factors will now be explored in the context of this proceeding.

With regard to the first factor mentioned by the Supreme Court, it should be stressed that the parole officer was under a duty (Executive Law, § 259-a, subd 5) to ascertain whether there had been a parole violation. In that setting, a parole officer is not required to give *Miranda* warnings when making his initial inquiry concerning a possible parole violation (cf.

*People v Ronald W.,* 24 NY2d 732, 734). Likewise, as the court at Criminal Term found, the petitioner was not entitled to counsel at this early stage of inquiry (cf. *People ex rel. Calloway v Skinner,* 33 NY2d 23, 32). Hence, I would not find the petitioner's admission to be tainted by reason of any Fifth of Sixth Amendment violation committed by the parole officer.

The remaining three factors mentioned by the Supreme Court are interlocking and will be discussed together. I would exclude petitioner's admission because of its " 'direct causal link' " with the Fourth Amendment violation by the police. *(People v Waddy,* 63 AD2d 492, 497.) Paragraph 7 (e) of petitioner's release agreement provides as follows (7 NYCRR 1915.10): "(e) I will advise my parole officer at any time that I am questioned or arrested by members of any law enforcement agency." In conjunction with paragraph 7 (e), one must also read paragraph 3 of the release agreement (7 NYCRR 1915.10): "(3)(a) I will fully comply with the instructions of my parole officer. (b) I will make office and written reports as I am directed. (c) I will reply promptly, fully and truthfully to any communication from a member of the board, a parole officer, or other authorized representative of the board. (d) I am aware that making false reports or replies may be considered a violation of the condition of my release." As a direct consequence of the illegal seizure, the petitioner was forced to contact his parole officer and to respond truthfully to the parole officer's questions under threat of facing charges for violating the conditions of his parole.

The passage of the four days between the illegal seizure and the admission is of little significance since the petitioner was required, under the conditions of his release, to answer the parole officer's questions whenever they were propounded. Furthermore, the petitioner's status as a parolee is not an "intervening circumstance" or disability that would dissipate the original taint. The Court of Appeals in *Matter of Finn's Liq. Shop v State Liq. Auth.* (24 NY2d 647, *supra),* as was already stressed, extended the protection of the exclusionary rule to all administrative proceedings. By fair implication, the rule was thus extended to all individuals involved in such proceeding, even parolees.

The majority's reliance upon the Court of Appeals' recent pronouncement in *People v McGrath* (46 NY2d 12) is misplaced. Upon facts totally different from those presented on this appeal, the Court of Appeals found that the evasively

contumacious and perjured testimony of the two appellants before the Grand Jury dissipated any taint flowing from the illegal wiretaps. Contrary to the majority's assertion, the Court of Appeals never found that the exclusionary rule is only operative in administrative hearings when the officers of the particular agency involved illegally seized the evidence. For example, in *Matter of McPherson v New York City Housing Auth.* (47 AD2d 828, *supra*) cited with approval in *People v McGrath (supra),* evidence illegally seized by the New York City Police was suppressed in a disciplinary proceeding of a New York City Housing Patrolman.

I agree with the conclusion of the Appellate Division, Second Department, that "[t]he deterrent effect of the exclusionary rule would be seriously diluted if a parolee could be deprived of his freedom by the use of illegally seized evidence." *(People ex rel. Piccarillo v New York State Bd. of Parole,* 64 AD2d 642.) Accordingly, I would vote to reverse, on the law, the judgment of the Supreme Court, Bronx County (CIOFFI, J.), entered July 31, 1978, which denied petitioner's request to be released from custody and directed a new final revocation hearing, and I would grant the petition and restore the petitioner to parole under the conditions heretofore in effect.

LUPIANO, EVANS and SULLIVAN, JJ., concur with LANE, J.; MURPHY, P. J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, entered on July 31, 1978, affirmed.