THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC PARKER, Appellant.

Second Department, September 21, 1981

APPEARANCES OF COUNSEL

*William E. Hellerstein (Abigail Everett* of counsel), for appellant.

*Eugene Gold, District Attorney (Alan D. Rubinstein* of counsel), for respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

The defendant has been convicted of criminal possession of a weapon in the third degree upon his plea of guilty. Prior to his plea a hearing pursuant to *People v Huntley* (15 NY2d 72) was held on the defendant's motion to suppress his statements made to his parole officer, and the defendant's motion was denied (101 Misc 2d 800).

The defendant appeals, claiming that his statements should have been suppressed, and that, accordingly, his conviction must be reversed. We agree. Statements made to a parole officer by a parolee cannot be used against the parolee to establish his guilt with respect to a crime for which the parolee is indicted, where the circumstances are that the parolee was not given *Miranda* warnings (*Miranda v Arizona*, 384 US 436) at the time the statements were made, and the parolee was represented by counsel in the criminal proceedings under the indictment.

I

On April 22, 1978 the defendant was arrested on charges of criminal possession of a weapon in the third degree, assault in the second degree and attempted robbery in the first degree. He was arraigned the next day and counsel assigned. At the time the defendant was a Federal parolee. The defendant, on April 24, 1978, communicated with his parole officer and told him that he had been arrested.

The defendant visited his parole officer on April 26, 1978, and told him the nature of the charges against him, that he was free on bail, and that he was represented by counsel. The parole officer then asked the defendant about the circumstances of the arrest, warning him "that any discussion he had with me at that time could result in a possible parole revocation based on any statement he might want to make"; he did not, however, inform the defendant of his rights under *Miranda*. The defendant answered that he had been standing with a girlfriend on a street corner, when a passing car splashed water on them; that he shouted at the driver, whereupon the latter stopped his car and words were exchanged; that apparently the discussion grew heated, and the defendant attempted to leave; that a police car arrived, and he was told that he was under arrest for robbery of the persons involved in the dispute; and that the police found a gun near him. In reply to the direct question of the parole officer, the defendant said that the gun was his. At this time the defendant was not under detention and was not arrested by the parole officer.

In June, 1978 the parole officer conveyed this information to the Parole Commission. Nonetheless, the defendant was advised that no proceedings would be instituted for revocation of parole until the complaint against him had been determined. The parole officer at this time did not transmit any information to the District Attorney. Meanwhile, the defendant continued to report to his parole officer.

The case was presented to the Grand Jury in October, 1978. The Grand Jury failed to return an indictment, and on October 23, 1978 the charges against the defendant were dismissed. The defendant reported these facts to his parole officer by telephone and was told to come to the parole office to "talk about the details of that arrest in full * * * because we now have to deal with the Parole Commission in terms of the arrest and so forth."

When the defendant again reported, the parole officer repeated the warning that whatever the defendant said could be used against him to revoke his parole; nevertheless, no *Miranda* warnings were administered. On this occasion the defendant said that he possessed the gun because he was carrying a large sum of money to deposit as rent for an apartment he was about to lease. The parole officer asked the defendant whether he would put in writing what he had said. The defendant assented and was given a form to use. Five days later the defendant brought the written statement to the parole officer.

The written statement, in more particulars and elaboration, stated the substance of what the defendant had already orally communicated to the parole officer, together with a plea for favorable consideration. Following instructions from his supervisor, the parole officer, in December, 1978, notified the District Attorney of the defendant's statements. When the matter was resubmitted, the parole officer testified before the Grand Jury. On February 5, 1979 the Grand Jury indicted the defendant for criminal possession of a weapon in the third degree.

## II

The defendant moved to suppress the statements made by him to his parole officer. A hearing was then held on the

motion. At the hearing the parole officer testified concerning the circumstances and content of the oral and written statements of the defendant, and he also testified that the defendant, as a Federal parolee, was required to comply with the regulations of the United States Parole Commission, including the requirement of reporting periodically and notifying his parole officer if arrested.

Criminal Term denied the motion, holding that a probation officer is not a law enforcement agent within *Miranda,* and, hence, is not obliged to give *Miranda* warnings; moreover, the court said that defendant, a parolee, was not entitled to the assistance of counsel when interviewed by a parole officer, under the dictates of *People v Hobson* (39 NY2d 479), because at the time the defendant's written statement was made, which statement "triggered" the supervisor's order, the underlying criminal proceeding had been dismissed, and the defendant's counsel was no longer representing him *(People v Parker,* 101 Misc 2d 800, *supra).*

The defendant's challenge to Criminal Term's determination assumes two lines. First, the defendant argues that a parole officer is in truth an agent of the State when he gathers information and transfers it to the District Attorney as the foundation for the prosecution of a crime. Second, the defendant submits that the oral and written statements were made at a time that the parole officer knew that the defendant was represented by counsel in the criminal proceedings against him, and that, accordingly, those statements must be suppressed under *People v Hobson (supra)* and *People v Roberson* (41 NY2d 106); in addition, the defendant contends that the termination of the original complaint against him did not eliminate the defendant's right to counsel, since the information elicited dealt with the very facts on which the complaint had been based.

In answer, it is urged by the People that a parole officer is not a law enforcement officer, and that here the parole officer acquired the statements not as an agent of the District Attorney; and it is further argued that the statements were made while the defendant was not in a custodial setting. Moreover, it is contended by the People that

the absence of the defendant's counsel did not render his statements inadmissible, because they were not made to a law enforcement officer, and that in the instance of the written statement received at a time when the defendant did not have counsel present, no right to counsel had been violated, since the criminal proceedings had already ended, and consequently the defendant at that point was not represented by counsel.

### III

Preliminarily our inquiry must be directed toward the relationship between parole officer and parolee. Once a prisoner is released on Federal parole, his continued liberty depends on his observance of the conditions of the parole, and he remains in constructive custody during the period of the parole (US Code, tit 18, § 4210, subd [a]; *Minder v Assistant Director, Bur. of Pardons & Paroles,* 229 F2d 432; cf. *People ex rel. Natoli v Lewis,* 287 NY 478).[*] One of the conditions of Federal parole is that the parolee shall report at stated intervals, and on request at other times, to his parole officer and give "complete and truthful" information (28 CFR 2.40 [a] [5]).

The relationship thus established is not altogether adversary in character (cf. *People v Peace,* 18 NY2d 230, 236). Although the parole officer is under a duty to take action toward revocation of parole in the event the parolee breaches the terms of parole, at the same time the parole officer is entitled to receive, and the parolee obligated to give, accurate statements concerning the parolee's activities. As we have previously said, the parolee has a "vital interest in continued release" resting "upon his obedience and co-operation with his supervising parole officer." *(People v Alston,* 77 AD2d 906, 907; cf. *People v Ferguson,* 90 Misc 2d 467 [CARRO, J.].) Indeed, the parolee is duty bound to disclose to his parole officer an arrest while on parole on pain of revocation of parole for failure of disclosure. The parolee is thus thrust on the tines of a dilemma if, on the one hand, he must truthfully state the circumstances underlying his arrest or face the consequence of the revoca-

---

[*] In New York, similarly, a parolee is in the local custody of the Division of Parole (9 NYCRR 8003.1 [a]), and is expected to comply with the conditions of his parole (9 NYCRR 8003.1 [b]).

tion of parole, and, on the other hand, risk conviction because his statements may be used as evidence against him in a prosecution based on the arrest. In this difficult aspect of the relationship between them, the parole officer necessarily assumes the role of a law enforcement agent *(People v Moore,* 79 AD2d 619).

The reciprocal obligations thus arising from the relationship of parole have been said to exact "heavy psychological pressure" on a parolee to answer inquiries made by his parole officer *(United States v Deaton,* 468 F2d 541, 544), rendering inadmissible responsive incriminating statements made by a defendant to his parole officer in the absence of *Miranda* warnings (see, e.g., *State of Ohio v Gallagher,* 38 Ohio St 2d 291, vacated and remanded 425 US 257, after remand 46 Ohio St 2d 225; *State of Arizona v Magby,* 113 Ariz 345, 349; *State of New Jersey v Davis,* 67 NJ 222, 227; *People v Diesing,* 67 Ill App 3d 109; cf. *State ex rel. Struzik v Department of Health & Social Servs.,* 77 Wis 2d 216). The distinction must be properly drawn between routine interviews required by parole, not implicating the need for *Miranda* warnings, and statements extracted by the parole officer and then offered against the parolee outside the structure of the parole system, as in a trial held on subsequent criminal charges against a parolee, necessitating *Miranda* warnings *(State of New Jersey ex rel. J.P.B.,* 143 NJ Super 96).

This distinction between proceedings within the parole system and criminal proceedings outside the system underlies the determination in *People v Ronald W.* (24 NY2d 732), holding that a probation officer need not give *Miranda* warnings before questioning a probationer with respect to revocation of probation. In such a case, the parolee's answers are obviously given as part of the probation (or parole) process, and are to be used only within the process; manifestly it would be imposing additional sanctions on the parolee if the answers could be used against the parolee in the trial of pending criminal charges.

Here the record is clear that the defendant discharged his responsibility in the parole process by informing the parole officer of his arrest. He responded to the queries of the parole officer concerning the circumstances involved,

and the parole officer did not take action against him but awaited the outcome of the criminal proceedings. When those proceedings were terminated favorably to the defendant, he complied with the direction of the parole officer that he reduce his report to writing. At no time was the defendant informed that his statements could be used against him in the pending criminal proceeding or future criminal proceedings.

We think that not only should *Miranda* warnings have been administered under these circumstances, but also that the use of statements made by a parolee to his parole officer as evidence in a criminal trial against the parolee disrupts and destroys the confidence and trust which must inevitably inhere in the relations created by the parole system. The parole system presupposes the rehabilitation of the offender and must be built on the frank communication of advice and information between parolee and his supervisor, and that relationship will be damaged beyond repair if the indispensable pillar of candid exchange is undermined.

IV

We think too, that the defendant's second argument has merit. The record is again clear that the parole officer knew from the outset that the defendant was represented by counsel in the criminal proceedings. The oral statements first made by the defendant occurred in the absence of counsel and must therefore be suppressed (see *People v Skinner,* 52 NY2d 24; *People v Roberson,* 41 NY2d 106, *supra; People v Hobson,* 39 NY2d 479, *supra).*

The written statement, nevertheless, presents a further problem in that it was made after the criminal proceedings had ended, and presumably after counsel assigned to the defendant in the proceedings had no further responsibility to the defendant, since counsel's assignment necessarily had been completed. We think that to permit the use of the written statement under this view would place too narrow a limitation on the rule mandating suppression.

The defendant's written statement, for all that appears, includes the substance of the oral information he had previously imparted to the parole officer. He was plainly

under an obligation to comply with the direction of the parole officer to put his statements in writing, and, of course, the parole officer would expect that the writing would accord with the information that he had already received from the defendant. Hence, the written statement falls within the taint attaching to the oral statements, under the theory of "letting the cat out of the bag", which treats successive confessions as equally inadmissible, where the first is infected by the absence of *Miranda* warnings and the others follow in short order, even though accompanied by warnings *(People v Tanner,* 30 NY2d 102, 106; *People v Bodner,* 75 AD2d 440, 448-449; *People v Newson,* 68 AD2d 377, 388-389).

It is true that under *Tanner (supra,* p 106), it is usually a question of fact "[w]hether an accused believes himself so committed by a prior statement that he feels bound to make another". In this case, however, the defendant's state of mind is governed by the conditions of parole imposed on him by law — to answer truthfully when reporting and to abide by the orders of his parole supervisor. A retreat by the defendant from his oral statements already recorded within the memory of the parole officer when later the defendant was required to cast them in written form would undoubtedly subject the defendant to further inquiry and probably suspicion.

The written statement and the oral statements must accordingly be treated similarly, and we hold that they all must be suppressed.

V

We conclude, and the People concede, that on this record the denial of the defendant's motion to suppress cannot be termed harmless (see *People v Harris,* 48 NY2d 208; *People v Grant,* 45 NY2d 366; *People v Rolston,* 66 AD2d 617).

Although the defendant urges that the indictment should be dismissed because it is founded on the statements, we decline to do so. The validity of the indictment is presently not before us and it is prima facie valid (cf. *People v Mauceri,* 74 AD2d 833). The defendant, if he desires to test the indictment, must move against it at Criminal Term.

We therefore reverse the judgment appealed from, grant the defendant's motion to suppress the statements made to the parole officer, and remit the case to Criminal Term for further proceedings.

TITONE, GIBBONS and COHALAN, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered May 15, 1980, reversed, on the law, plea vacated, motion to suppress statements granted, and case remitted to Criminal Term for further proceedings consistent herewith.