OPINION OF THE COURT
Anthony F. Bonadio, J.
The respondent, charged with having committed acts which, if done by an adult, would constitute the crimes of burglary, second degree (Penal Law, § 140.25), and grand larceny, third degree (Penal Law, § 155.30), moves to suppress (a) oral and written statements given to his Division For Youth (DFY) counselor, and (b) a written statement given to a Monroe County Deputy Sheriff. A hearing was held on the motion (People v Huntley, 15 NY2d 72) at which the counselor (David Pankratz), deputy sheriff (Joseph Bender) and another DFY employee (George Allen) testified for the petitioner. The respondent testified, very briefly, on his own behalf. We find and decide as follows:
The petition and supporting depositions and the proof adduced at the hearing reveal that in December, 1982, the respondent was in the custody of the Division For Youth (DFY) pursuant to a Family Court placement on a prior delinquency petition (see Family Ct Act, §§ 753, 756; Executive Law, art 19-G). On or about December 3, 1982, the respondent absconded from the DFY facility at Industry, New York. He remained absent and his whereabouts were *19 unknown until December 29, 1982, when he telephoned the facility from Buffalo, New York, spoke with David Pankratz, his counselor, and advised him that he wanted to surrender. Pankratz suggested that the respondent take a bus to Rochester where he would pick him up. On December 30, 1982, Pankratz picked up the respondent as planned, and they drove back to Industry together in a van.
During the ride back, Pankratz advised the respondent — then 15 years of age — that he had to take a statement from him, and that it was “standard operating procedure” to do so whenever a resident left the facility without permission (see, e.g., Executive Law, § 524; but cf. 9 NYCRR 181.7; Family Ct Act, § 724).[1] The respondent not only talked about his escape, but incriminated himself with respect to the crimes underlying the present petition. Petitioner concedes that Pankratz never gave the respondent any Miranda (Miranda v Arizona, 384 US 436) warnings, but argues that Pankratz was under no duty to do so since he is neither a “police officer” or “peace officer” (CPL 1.20, subds 34, 33; 2.10; cf. Family Ct Act, § 724), a “public servant engaged in law enforcement activity” or a person acting under the direction or in co-operation with such a public servant (CPL 60.45, 710.20, subd 3).
Upon their arrival at Industry, Pankratz escorted the respondent to a conference room,[2] where he reduced the latter’s statement to writing and had it signed. Desirous of having this statement typed, Pankratz left it under an office door, from where it was eventually picked up and typed on December 31, 1982.[3]
Later that same day — that is, on the evening of December 30,1982 — the respondent was again questioned about the crimes involved in the case at bar. This questioning, which also took place in the conference room, was con *20 ducted by Monroe County Deputy Sheriff Joseph Bender; George Allen, a youth aide at Industry, was also present. Bender had been investigating the burglary and larceny since December 4, and was at Industry when Pankratz returned with the respondent. Bender testified that the respondent was a suspect in these crimes, and that he knew that the respondent had given Pankratz a statement.[4] Deputy Bender advised the respondent of his Miranda rights, which, petitioner claims, respondent “knowingly and intelligently waived” (cf. Matter of Gault, 387 US 1). Respondent made another damaging statement, which was also reduced to writing and signed. Bender concedes that he made no effort to contact the respondent’s parents before questioning commenced, and the Industry personnel made no such attempt either (see n 1, supra, p 19; cf. Family Ct Act, § 724).
Due process requires that “special considerations of care” be taken in the interrogation of juveniles (see, e.g., Haley v Ohio, 332 US 596; Gallegos v Colorado, 370 US 49; Matter of William L,, 29 AD2d 182). Where, as here, the juvenile is neither represented by an attorney nor able to secure the counsel and guidance of a parent or guardian, “the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair” (Matter of Gault, 387 US 1, 55, supra; emphasis added).
The warnings required by Miranda are intended to secure and safeguard an individual’s privilege against self incrimination. Miranda only applies, however, to “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way” (Miranda v Arizona, 384 US 436, 444, supra; cf. Fare v Michael C., 442 US 707; People v Bodner, 75 AD2d 440). Therefore, with respect to the statements given to Pankratz, we must determine (a) his status as a law enforcement officer for Miranda purposes, (b) the nature of the interrogation, and, *21 should we conclude that the interrogation was custodial and Pankratz was acting as a law enforcement officer, (c) whether or not the respondent “knew the rights he was waiving” (Nettles v State, 248 So 2d 259, 261 [Fla], Mann, J., dissenting opn).
(1) IS PANKRATZ A PUBLIC SERVANT ENGAGED IN LAW ENFORCEMENT ACTIVITY?
The proof establishes that Mr. Pankratz is neither a police officer nor peace officer as those terms are defined in the Criminal Procedure Law (see p 19, supra). He is, however, a public servant (Penal Law, § 10.00, subd 15), and the narrow issue to be resolved is whether or not his questioning of the respondent amounts to “official interrogation” by an agent of the State (see Estelle v Smith, 451 US 454, 467; People v Parker, 82 AD2d 661, affd 57 NY2d 815).
Although we have been unable to locate a case in which suppression of a statement to a DFY counselor was sought, other cases involving analogous situations are instructive.[5] In People v Parker (82 AD2d 661, affd 57 NY2d 815, supra), the Second Department (reversing Criminal Term, see 101 Misc 2d 800) rejected the People’s argument that a parole officer is not engaged in law enforcement activity for Miranda purposes, and held that statements made by the defendant to his parole officer in the absence of such Miranda warnings are inadmissible at a subsequent criminál trial (see, also, People v Ferguson, 90 Misc 2d 467; People v Moore, 79 AD2d 619). This result is in accord with that of the majority of courts in other jurisdictions which have considered the issue (see Marrs v State, 53 Md App 230, 452 A2d 992, and cases cited therein at p 994).[6]
*22 For purposes of our inquiry, Pankratz’ relationship with the respondent is not substantially different — in kind or degree — from a parole officer’s relationship with a parolee (cf. Fare v Michael C., 442 US 707, supra). Both must develop the confidence and trust of those under their care or supervision, and both are State employees who may owe their employer obligations which conflict with those of their charges (see Fare v Michael C., supra, at pp 720-721; People v Parker, supra, at pp 665-666; cf. 9 NYCRR 171.10; 181.2; 181.8). As the court noted in Parker (82 AD2d, at p 667): “We think that not only shoxild Miranda warnings have been administered under these circumstances, but also that the use of statements made by a parolee to his parole officer as evidence in a criminal trial against the parolee disrupts and destroys the confidence and trust which must inevitably inhere in the relations created by the parole system. The parole system presupposes the rehabilitation of the offender and must be built on the frank communication of advice and information between parolee and his supervisor, and that relationship will be damaged beyond repair if the indispensable pillar of candid exchange is undermined.”
Similar concerns may be voiced about the use of statements by DFY counselors against juveniles in later delinquency proceedings.[7]
(2) WAS THE INTERROGATION CUSTODIAL IN NATURE?
Notwithstanding the presence of a few individual factors, which, in another context, might suggest that the questioning in the van was noncustodial in nature, the “totality of the circumstances” indicates otherwise. At a minimum the respondent, who had just surrendered himself to those charged with his care, was not free to leave (9 NYCRR 181.8; People v Moore, 79 AD2d 619, supra).
(3) DID THE RESPONDENT KNOW THE RIGHTS HE WAS WAIVING?
There is nothing in the record indicating that the respondent “knowingly and intelligently” waived his rights *23 prior to giving Pankratz a statement. Petitioner failed to prove that the respondent knew the nature of the rights he was not advised of but is claimed to have waived (see Matter of Gault, 387 US 1, supra; Matter of Karen XX., 85 AD2d 773).
In sum, we conclude that Pankratz was engaged in law enforcement activity for the purposes of Miranda, and that his failure to give respondent his Miranda warnings prior to custodial interrogation renders inadmissible in this proceeding the statements taken from respondent.
The motion to suppress must also be granted with respect to the statements given to Deputy Bender, but for different reasons. Where an initial confession “is infected by the absence of Miranda warnings and others follow in short order, even though accompanied by warnings” the latter are tainted and equally inadmissible (People v Parker, 82 AD2d 661, 668, affd 57 NY2d 815, supra; People v Tanner, 30 NY2d 102; People v Bodner, 75 AD2d 440, supra; cf. People v Bernal, 92 AD2d 489).
Even if the statement taken by Deputy Bender were considered untainted, it would nevertheless still have to be suppressed. The courts of this State have generally held that a parent or guardian must be notified of and present during the custodial interrogation of a juvenile (Family Ct Act, § 724, subd [b]; Matter of Aaron D., 30 AD2d 183; Matter of William L., 29 AD2d 182, supra; People v King, 116 Misc 2d 614). The presence of DFY worker George Allen during this questioning does not satisfy these due process requirements (Matter of Penn, 92 Misc 2d 1043; cf. Matter of Brian P. T., 58 AD2d 868).
Because “special considerations of care” were lacking in the interrogation of this respondent, the motion to suppress is granted.

. It is unclear whether or not the respondent’s parents or guardian were advised of his escape on December 3, 1982, although such notification is required (9 NYCRR 181.2 [bI). In addition to not giving the respondent any Miranda warnings, Pankratz did not ask him if he wished to talk to his parents or guardian prior to taking his statement.

. This conference room has been approved by the Appellate Division, Fourth Department, as a suitable place for the questioning of juveniles (Family Ct Act, § 724, subd [bl, par |ii]). If Pankratz is not a peace officer or police officer as claimed, section 724 would also not apply to him.

. At the Huntley hearing, the court admitted into evidence the signed, handwritten version of this statement, but rejected the offer of the typed version.

. Although Bender also testified that he did not know the substance of the statement, we find that he knew the statement was incriminatory and not exculpatory.

. “Official” interrogators have been held to include IRS agents (Mathis v United States, 391 US 1); prison guards (Whitfield v State, 287 Md 124, cert dsmd 446 US 993); court-appointed psychiatrists (Estelle v Smith, 451 US 454) and prosecuting attorneys (People v Arnold, 66 Cal 2d 438), in addition to parole officers, as discussed in the text. (Cf. Matter of Diana A., 65 Misc 2d 1034 [representative of Society for the Prevention of Cruelty to Children not required to warn mother that statements given to him might be used against her in a neglect proceeding]; Matter of Koretta W., 118 Misc 2d 660 [motion to suppress juvenile’s statement to social worker (CPLR 4508) denied!.)

. A parole officer need not give Miranda warnings during “routine” parole interviews, even where the parolee’s statements may be used against him within the parole system (e.g., at a revocation proceeding) (People v Ronald W., 24 NY2d 732; People v Parker, 82 AD2d 661, 666, affd 57 NY2d 815).

. Cf. section 735 of the Family Court Act, and 22 NYCRR 2507.4 (a) (6), which prohibits statements made to the probation service at preliminary adjustment conferences from being introduced into evidence at fact-finding hearings.