THE PEOPLE OF THE STATE OF NEW YORK ex rel. RALPH MAIELLO, by RICHARD FINKELSTEIN and STEVE SANDLER, Appellant, v NEW YORK STATE BOARD OF PAROLE et al., Respondents.

First Department, May 22, 1984

APPEARANCES OF COUNSEL

*Steve Sandler* of counsel (*Roger Brazill* and *William E. Hellerstein,* attorneys), for appellant.

*Hugh Weinberg* of counsel (*Melvyn R. Leventhal* and *Gerald J. Ryan* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondents.

OPINION OF THE COURT

ASCH, J.

Appellant was paroled on July 31, 1980, from a sentence of 0 to 6 years imposed upon his conviction for robbery in the second degree on February 23, 1978. On January 8, 1982, appellant was arrested in The Bronx for attempted burglary and possession of a weapon in the third degree. He was arraigned in Bronx Criminal Court on January 10 on the weapons count and on January 12 he was released on bail.

At that time, his Legal Aid counsel advised him of his obligation to notify his parole officer of the arrest. Counsel further advised appellant that counsel would represent him at any subsequent parole revocation hearing. Further, counsel asserts in an affidavit submitted to the Supreme

Court that he advised his client to inform the parole officer that appellant had counsel and not to discuss the details surrounding the arrest. Counsel claims that he attempted to contact the parole officer prior to January 13 to no avail. On January 15, he filed a notice of appearance on appellant's behalf.

On January 13, appellant reported to his parole officer, John Hubschman, and informed the officer of his arrest. According to Mr. Hubschman, "Mr. Maiella [sic] when he reported he said, 'My lawyer said not to give you any details of the arrest.' I said to him, 'I am your parole officer.' He then continued to give me the details of the arrest without cohesion [sic] or anything." Appellant admitted having violated the conditions of his parole. Mr. Hubschman thereupon obtained a parole violation warrant and formally took appellant into custody. After a final parole hearing, in which Parole Officer Hubschman appeared as a witness and testified as to the statements made by appellant, the hearing officer found that appellant had violated the terms of his parole. Appellant was ordered remanded for one year or, in accordance with any new sentence imposed. He was subsequently sentenced to a term of 2½ to 5 years on his conviction for criminal possession of a weapon in the third degree. Currently, he is incarcerated as both a parole violator and on the new charge, consecutive as to any time owed on parole.

Appellant claimed at the Supreme Court and asserts upon this appeal that since he was represented by counsel, he could not be questioned by the parole officer concerning the circumstances of his new arrest. Furthermore, appellant has asserted and now claims that his statements, made in counsel's absence, were obtained in violation of his statutory and constitutional rights and were therefore inadmissible against him at his final parole revocation hearing. The Supreme Court, which dismissed the CPLR article 70 proceeding, did so on the merits, concluding that neither appellant's statutory nor his constitutional rights were violated by the interview with the parole officer. We agree with that conclusion.

The revocation of parole has long been held as "not part of a criminal prosecution and thus the full panoply of

rights due a defendant in such a proceeding does not apply to parole revocations." (*Morrissey v Brewer,* 408 US 471, 480.)

Appellant, while on parole, was under the supervision of the Division of Parole (Executive Law, § 259-i, subd 2, par [b]; *People v Parker,* 82 AD2d 661), which was charged with the continuing duty of supervising his conduct in matters which included the prompt investigation of any alleged violations of the conditions of his parole. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence" (*Morrissey v Brewer, supra,* at p 477), and revocation of parole "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observation of special parole restrictions" (*supra,* at p 480).

A parole officer is specifically mandated by statute to inquire into possible parole violations (Executive Law, § 259-a, subd 5; *People ex rel. King v New York State Bd. of Parole,* 65 AD2d 465, 468). Thus, when appellant reported to Officer Hubschman that he had been arrested, the officer was merely performing his duty by inquiring as to the circumstances of a probable parole violation. The statements were admissible at the revocation hearing and this hearing was *not* a stage of a criminal prosecution (see *People ex rel. King v New York State Bd. of Parole, supra*).

The Second Department has recently held: "Unlike *People ex rel. Piccarillo v New York State Bd. of Parole* (48 NY2d 76), the instant case does not involve the admission into evidence at a parole revocation hearing of previously suppressed evidence or evidence which was unlawfully seized. We therefore conclude that the petitioner's statutory and constitutional rights were not violated by the March 25, 1981 interview with his parole officer (see *United States v Rea,* 678 F2d 382 [while a pretrial detainee has a right to remain silent and to have an attorney present during questioning by the police, a probationer does not have an equivalent right when called upon to respond to the supervision efforts of his probation officer])"

(*Matter of Utsey v New York State Bd. of Parole,* 89 AD2d 965, 967).

Appellant herein was *not* under arrest pursuant to the parole violation warrant when he made the admissions to Parole Officer Hubschman and therefore was not subjected to "custodial interrogation". The United States Supreme Court has recently held, in the case of a probationer who made admissions to his probation officer, that the probationer had no right to *Miranda* warnings (*Miranda v Arizona,* 384 US 436) when he met with the officer in a noncustodial interrogation, although at such meeting, "the probation officer could compel [the probationer's] attendance and truthful answers" (*Minnesota v Murphy,* 465 US ___, 52 USLW 4246, 4249). Although the *Murphy* case addressed the Fifth Amendment and the case at bar involves the Sixth Amendment, if a parolee has no right to *Miranda* warnings when meeting with his parole officer, then by analogy, neither does he have a right to have counsel present at such meetings. In addition, the Supreme Court in *Minnesota v Murphy* (*supra*) held that the statements were admissible in a criminal prosecution. A fortiori, in view of the fact that in the case at bar the appellant's statements were used exclusively in the parole revocation process and not during trial, it is clear that none of his rights was violated.

Appellant's contention that the Division of Parole had notice he had secured counsel for parole revocation matters, and that the parole officer should have refrained from further questioning in the absence of his attorney, is also without merit. No such statutory or constitutional right exists. "Although a request for a lawyer during custodial interrogation is sufficient to invoke the privilege against self-incrimination, *Fare* v. *Michael C.,* 442 U.S. 707, 709 (1979), [appellant] was not in custody * * * and he had no federal right to have an attorney present at the meeting. See *United States* v. *Rea,* 678 F.2d 382, 390 (CA2 1982); *People* v. *Ronald W.,* 31 App. Div. 2d 163, 165, 295 N.Y.S.2d 767, 769 (1968), aff'd, 24 N.Y.2d 732, 249 N.E.2d 882, 302 N.Y.S.2d 260 (1969); *Hughes* v. *Gwinn,* ___ W. Va. ___, 290 S.E.2d 5, 7 (1981)" (*Minnesota v Murphy, supra,* p ___, p 4247, n 3). Even assuming appellant had a right to

counsel, it does not appear that the Division of Parole had notice that appellant was represented by counsel at the time of his interview with the parole officer on January 13, 1982, since the notice of appearance was admittedly filed on January 15, 1982, with the Division. Further, there is no showing (or suggestion) in the record that appellant was coerced or made the statements involuntarily.

Since appellant would not be entitled to immediate release, a writ of habeas corpus does not lie even if the claims stated in such writ were meritorious. Accordingly, we modify to convert the proceeding to one brought pursuant to CPLR article 78 (see CPLR 103, subd [c]; *Matter of Piersma v Henderson,* 60 AD2d 1001, affd 44 NY2d 982).

Accordingly, the judgment of the Supreme Court, Bronx County (B. Hecht, J.), entered October 15, 1982, which dismissed petitioner-appellant's CPLR article 70 petition for a writ of habeas corpus, should be modified, on the law and facts, solely to convert the proceeding *nunc pro tunc* into one pursuant to CPLR article 78, and, as modified, otherwise affirmed without costs.

CARRO, J. P., FEIN, MILONAS and KASSAL, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on October 15, 1982, unanimously modified, on the law and the facts, solely to convert the proceeding *nunc pro tunc* into one pursuant to CPLR article 78 and, as so modified, otherwise affirmed, without costs and without disbursements.