OPINION OF THE COURT
Joseph Harris, J.
On September 6, 1984, pursuant to an order for pretrial probation issued by the Town Justice of the East Greenbush Justice Court in an open unrelated criminal matter, the defendant resided at "Paul House”, a nonsecure residential treatment program for drug and alcohol abuse. On this charge the defendant was represented by the Rensselaer County Public Defender’s office. At this time the defendant was also on probation in Rensselaer County pursuant to a sentence with respect to a previous conviction in said county on another matter also unrelated to the Albany County charge.
On the above date the defendant’s probation officer was contacted by one Officer Gowie of the Colonie Police Department, who requested his assistance in getting back a ring believed to have been stolen by the defendant in Albany County. Officer Gowie informed the probation officer that he had spoken to defendant Quickenton about the matter and the defendant was uncooperative. Officer Gowie told the probation *608 officer that he wasn’t interested in pressing charges if he could get the ring back.
The probation officer thereupon went to "Paul House” and questioned the defendant about the Albany County larceny. Miranda warnings were not administered. The defendant acknowledged stealing the ring in question and further admitted that he had sold it for $100. Indeed, he then left "Paul House” to try to get the ring back, returning unsuccessfully two or three days later.
In this suppression hearing the defendant moves to suppress all statements made to his probation officer respecting the Albany County larceny, and all testimony by the probation officer relating to defendant’s conduct in seeking to retrieve the stolen ring.
Certain threshold and fringe questions must first be resolved before we get to the dispositive crux of this case.
Defendant contends it is probative that his probation officer knew at the time of the interrogation respecting the Albany County larceny that the defendant was in fact represented by an attorney with regard to the pending Rensselaer County (East Greenbush) criminal matter — that, accordingly, the defendant could not waive his right to counsel and be interrogated with respect to the Albany County matter absent the presence of counsel at such waiver. Defendant relies on People v Bartolomeo (53 NY2d 225).
However, where a defendant is represented by counsel only on an unrelated criminal matter, and not on the matter about which he is being interrogated, this particular rule is applicable only when the interrogation is custodial. The rule is applicable in noncustodial interrogation cases only where the defendant is, in fact, represented by counsel on the subject matter of the interrogation, or where the right to counsel has been triggered by the commencement of a judicial proceeding with respect to the subject matter of the interrogation, neither of which situations is the fact here. (See, People v Rogers, 48 NY2d 167; People v Kazmarick, 52 NY2d 322; People v Skinner, 52 NY2d 24; People v Bartolomeo, 53 NY2d 225, supra; People v Ellis, 58 NY2d 748; People v Torres, 97 AD2d 802.)
Thus, the applicability of Bartolomeo (supra) rests upon the status of defendant’s questioning — whether custodial or noncustodial.
The court has no difficulty with this question. In California v Beheler (463 US 1121, 1125 [1983], citing Oregon v Mathia *609 son, 429 US 492, 495), the United States Supreme Court stated: "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement’ * * * associated with a formal arrest.” In People v Yukl (25 NY2d 585, 589 [1969]), the New York Court of Appeals asserted: "In deciding whether a defendant was in custody * * * the subjective beliefs of the defendant are not to be the determinative factor. The test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position.”
The defendant was not under physical restraint in "Paul House”. This was a rehabilitative residence to which the defendant had been assigned by the terms and conditions of his probation. The doors were not locked and defendant was physically free to come and go, although he was bound by the terms and conditions of his probation, but no more so than one would be bound by the regulations of his parents if he were to live at home. And, indeed, the defendant did in fact take leave of "Paul House” for several days in an attempt to reacquire the stolen ring. In short, the questioning in the instant case did not take place in a police-dominated, coercive atmosphere such as faced by one in custody at a police station, to counteract which coercive atmosphere Miranda warnings are required. (See, Miranda v Arizona, 384 US 436.) Accordingly, the court finds that under the circumstances of the instant case, with respect to the applicability of Bartolomeo (supra), the interrogation was noncustodial, and thus Bartolomeo is inapplicable.
This, however, is not dispositive of the motion to suppress herein. Remaining still is the question as to whether not, under People v Parker (57 NY2d 815), Miranda warnings were required prior to interrogation, even though the interrogation herein was noncustodial in the sense of Miranda v Arizona (supra).
In People v Parker (supra), the Court of Appeals held firstly that where a statement made by a parolee to his parole officer is sought to be used in a criminal proceeding outside the parole system, the parole officer must be considered, for the purpose of determining the admissibility of such statement in such criminal proceeding, as a law enforcement agent.[1]
*610 This court has no quarrel with that holding. The problem that arises in the instant case, and indeed was present in People v Parker itself (supra), is that the interrogation here, and likewise there, was noncustodial in the sense described in Miranda v Arizona (supra). Thus, indeed, if in fact in the instant case the interrogation had been conducted by a police officer, Miranda warnings would not have been required. But where the interrogation is conducted by a parole officer or a probation officer, and the statement is sought to be used in a criminal proceeding outside the parole or probation systems, the Court of Appeals seems to be saying[2] that Miranda warnings are required even though the interrogation is noncustodial in the sense of Miranda v Arizona. In this special case the Court of Appeals appears to have grafted on to the normal definition of "custody”, for which the United States Supreme Court required Miranda warnings, a new concept perhaps best denominated as "functional equivalent of custody”, necessitated by the special and coercive relationship between parole officer and parolee, and probation officer and probationer. This is analogous to the concept of "functional equivalent of interrogation” enunciated by the United States Supreme Court in Rhode Is. v Innis (446 US 291) and the New York Court of Appeals in People v Stoesser (53 NY2d 648).
For the reason stated in footnote 2, that portion of Justice Hopkin’s opinion seeming to require pregiven Miranda warnings before the statements of a parolee to his parole officer can be used in a criminal proceeding (that is, one outside the parole system) would appear to be dictum. Was it the intention of the Court of Appeals in affirming "for reasons stated in the opinion by former Justice James D. Hopkins at the Appellate Division” (People v Parker, 57 NY2d 815, 817, supra) to adopt this dictum or to affirm solely on what seems to be *611 the gravamen of the Appellate Division opinion — the Skinner rationale — or both?
To further complicate the problem, language in the Appellate Division opinion seems to convey the feeling that statements by parolees to parole officers ought never to be used as evidence in a criminal trial even if in fact Miranda warnings were given before the statements were made. Said Justice Hopkins: "We think that not only should Miranda warnings have been administered under these circumstances, but also that the use of statements made by a parolee to his parole officer as evidence in a criminal trial against the parolee disrupts and destroys the confidence and trust which must inevitably inhere in the relations created by the parole system. The parole system presupposes the rehabilitation of the offender and must be built on the frank communication of advice and information between parolee and his supervisor, and that relationship will be damaged beyond repair if the indispensable pillar of candid exchange is undermined.” (People v Parker, 82 AD2d 661, 667.)
The United States Supreme Court reached the opposite result in Minnesota v Murphy (465 US 420), holding that an interview between a probationer and his probation officer was noncustodial and that admissions made by the probationer to his probation officer without prior Miranda warnings were admissible in the probationer’s subsequent criminal prosecution. However, this is not binding on the Court of Appeals with respect to its interpretation of the NY State Constitution (see, Miranda v Arizona, supra).
The most recent pronouncement of the Court of Appeals in the area of the use of statements made by parolees and probationers to their respective parole and probation officers is People ex rel. Maiello v New York State Bd. of Parole (65 NY2d 145). There the parolee informed his parole officer that his attorney advised him not to give the parole officer any details with respect to the matter for which he had been arrested, and was now free on bail, but at the parole officer’s urging the parolee did, in fact, supply said details. The issue of Miranda warnings did not arise.
The Court of Appeals stated: "A violation of a constitutional right may have different consequences depending upon whether the evidence obtained in violation of that right is attempted to be used in criminal or noncriminal proceedings.” (People ex rel. Maiello v New York State Bd. of Parole, 65 *612 NY2d 145, 146, supra.) The court then went on to hold: "Under these circumstances, any violation of relator’s right to counsel under the State Constitution would not preclude the use at a final parole revocation hearing of statements obtained by the parole officer in the absence of relator’s counsel” (p 146).
Then, curiously, citing both Murphy (supra) and Parker (supra), the Court of Appeals concluded its opinion with the following statement: "We are here not presented with the issue of the permissible uses, if any, of relator’s statements in other proceedings (cf. Minnesota v Murphy, 465 US 420, supra; compare, People v Parker, 57 NY2d 815, affg 82 AD2d 661, supra).” (People ex rel. Maiello v New York State Bd. of Parole, 65 NY 2d 145, 147, supra.)
It is not wise for a suppression court to be hypersensitive to seemingly innocuous language used by appellate courts, but the use of the phrase "if any” in Maiello (supra), with respect to the permissible uses of a parolee statement in nonparole proceedings (that is, criminal proceedings), conjures up the thought either that there is a split in the Court of Appeals on this subject or that the Court of Appeals in deciding Parker (supra), on the opinion of Justice Hopkins below, rather than writing its own formal opinion, intended to adopt the outer reaches of that opinion and to exclude parolee statements to parole officers in all nonparole proceedings regardless of prior-administered Miranda warnings.
In the opinion of the suppression court, absent a clear expression of opinion to the contrary by an appellate court, the current status of the law in New York State does not require the suppression court to go that far, but does require suppression in criminal proceedings of statements made by parolees or probationers to their respective parole and probation officers unless Miranda warnings were administered prior to the giving of such statements, whether the context is custodial or noncustodial in the sense intended by Miranda v Arizona (supra). Hopefully this is a workable compromise between the needs of a viable parole system and the constitutional rights of the defendant. If this puts him on the horns of a dilemma, the choice is his — and of his own making.
Accordingly, Miranda warnings not having been administered to the defendant by his probation officer prior to the questioning herein, the motion to suppress, as evidence in the forthcoming criminal trial, the statements made by defendant *613 to his probation officer respecting the subject matter of this case, and to suppress all testimony of the probation officer relating to defendant’s conduct in seeking to retrieve the stolen ring, is granted.
This memorandum constitutes both the decision and order of this court.
So ordered!

. Whether the status of the defendant is that of probationer or that of parolee is immaterial. The same rules apply in each case. (See, People v Ronald W., 24 NY2d 732.)

. The cautious language of the suppression court herein is dictated by the less than crystal clear opinion of the Court of Appeals in Parker (57 NY2d 815), and the somewhat cryptic language appearing in its most recent pronouncement on this subject, People ex rel. Maiello v New York State Bd. of Parole (65 NY2d 145). The Court of Appeals opinion in Parker simply recites: "Order affirmed for reasons stated in the opinion by former Justice James D. Hopkins at the Appellate Division” (p 817). The problem is that Parker is a Skinner-type case (People v Skinner, 52 NY2d 24), the gravamen of which was that the defendant’s statements to his parole officer, although made in a noncustodial setting, were made in the absence of counsel when the defendant was in fact represented by counsel on the very subject matter of the questioning. In such a situation the defendant’s statements are inadmissible in a criminal proceeding regardless of whether or not Miranda warnings were administered.